UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ENGINEERING/REMEDIATION RESOURCES GROUP, INC.<br><br>Plaintiff,<br><br>v.<br><br>PERFORMANCE SYSTEMS, INC.,<br><br>Defendant. | Case No. 1:17-cv-316-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

Pending before the Court in the above-entitled matter is Plaintiff's Application for Prejudgment Writ of Attachment and Temporary Restraining Order ("Application for Writ and TRO"). (Dkt. 3.) As further discussed below, the Court grants in part Plaintiff's Application for Writ of Attachment and will hold a show cause hearing on that Application. The Court denies Plaintiff's Motion for Temporary Restraining Order.

## PROCEDURAL HISTORY

On August 2, 2017, the Plaintiff filed a Complaint with a single breach of contract claim. (Dkt. 1.) Plaintiff seek economic damages, including compensatory damages, incidental damages, attorneys fees and costs, pre- and post- judgment, and any "such further relief as the Court deems just and proper." *Id.* Also on August 2, 2017, Plaintiff filed the instant Application for Writ and TRO. (Dkt. 3).

On August 14, 2017, Plaintiff filed an Affidavit of Service indicating that the Summons, Complaint, and Application for Writ and TRO, among other documents, were served upon the Defendant's Registered Agent. (Dkt. 8). Although the Defendant had not

yet appeared, the Court issued an expedited briefing schedule on the Application for Writ and TRO in the event Defendant was otherwise following the docket in this case. Defendant has still not appeared.

## BACKGROUND

The instant background comes exclusively from the Plaintiff's Complaint and the Affidavit of David Cavagnol ("Cavagnol Aff."). (Dkts. 1, 3-2.) Plaintiff is a California corporation with its principal place of business in Martinez, California. Defendant is an Idaho corporation with its principal place of business in Meridian, Idaho.

Plaintiff has a separate, primary contract with non-party, American Samoa Power Authority. On or about July 14, 2016, Plaintiff and Defendant entered into a written Subcontract Agreement. Pursuant to the Subcontract Agreement, Defendant agreed to supply and install two 200,000 gallon welded water storage tanks in Malaemi, American Samoa. In return, Plaintiff agreed to pay Defendant a total of $1,178,388.00, including a progress payment of $357,062.40.

Plaintiff represents that it fully performed its contractual obligations to date. In contrast, Defendant breached the contract by: (1) failing to pay its subcontractor for fabrication of the two welded storage tanks; (2) failing to complete fabrication of the tank accessories; and (3) by confirming verbally to Defendant on April 4, 2017 that it was unable to perform any further work on the Subcontract Agreement.

Due to Defendant's nonperformance under the Subcontract Agreement, Plaintiff is now required to pay other suppliers to fulfill its contractual requirements under its Prime

Contract with American Samoa Power Authority. In addition, it has not enjoyed any benefits resulting from the $357,062.40 payment.

As further set forth in the Application for Writ and TRO and supporting affidavit, Defendant's performance under the contract was "not secured by a mortgage, deed of trust, security interest, or lien upon real or personal property." (Dkt. 3-2). Further, Plaintiff represents that the "attachment is not sought and the action is not prosecuted to hinder, delay, or defraud any creditor of PSI." *Id.*

## DISCUSSION

**1.     Application for Writ of Attachment**

Under federal procedural law, a motion for writ of attachment is governed by the laws of the state where the district court in which the motion is filed is located, except that a federal statute will govern if one otherwise exists and applies. *See* Fed. R. Civ. P. 64. In this case, state law applies exclusively.

Federal Rule of Civil Procedure 64(a) generally provides that "every remedy is available that, under the law of the state where the court is located, provides for seizing ... property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64(a). This specifically includes writs of attachment. Fed. R. Civ. P. 64(b).

Under Idaho law, attachment is a remedy by which a plaintiff with a contractual claim to money, and not a claim to a specific item of property, may have various items of a defendant's property seized before judgment and held for potential execution after judgment. Idaho Code § 8-501 states a plaintiff "may make application to have the property of the defendant attached … as security for the satisfaction of any judgment that

MEMORANDUM DECISION AND ORDER- 3

may be recovered, unless the defendant gives security to pay such judgment." I.C. §8-501. Such a remedy applies in limited circumstances including "an action … upon contract … for the direct payment of money, where the contract is not secured by any mortgage, deed of trust, security interest or lien upon real or personal property." I.C. § 8-501.1.

Idaho Code § 8-502 sets forth three elements Plaintiff must establish by affidavit before a writ of attachment may issue. This specifically includes:

> 1. That the defendant is indebted to the plaintiff (specifying the amount of such indebtedness over and above all legal setoffs or counterclaims) and whether upon a judgment or upon a contract for the direct payment of money, and that the payment of the same has not been secured by any mortgage, deed of trust, security interest or lien upon real or personal property, or if originally secured, that such security has, without an act of the plaintiff, or the person to whom the security was given, become valueless.
>
> 2. When the defendant is a nonresident of this state, that such defendant is indebted to the plaintiff (specifying the amount of such indebtedness over and above all legal setoffs or counterclaims), and that defendant is a nonresident of the state.
>
> 3. That the attachment is not sought and the action is not prosecuted to hinder, delay or defraud any creditor of the defendant.

I.C. § 8-502(a).

If the Court is satisfied that the complaint and affidavit meet these three requirements, then it may issue an order directing the Defendant to show cause why a writ of attachment should not issue. I.C. § 8-502(b). Moreover, under certain circumstances, the Court may also issue a writ of attachment *before* a show cause hearing if it finds probable cause that "the property specifically sought to be attached is a bank account

MEMORANDUM DECISION AND ORDER- 4

subject to the threat of imminent withdrawal, or is perishable, and will perish before any noticed hearing can be had . . . ." I.C. § 8-502(c)(3).

### A. Plaintiff Has Made a Prima Facie Showing that a Writ of Attachment Should Issue.

Plaintiff has shown that a writ should issue pursuant to Idaho Code § 8-502(a). This finding is supported primarily by the Affidavit of David Caragnol. (Dkt. 3-2.)

First, Plaintiff has demonstrated that Defendant is indebted to it "upon a contract for the payment of money" in the amount of $357,062.40 over and above all legal set-offs as required by Idaho Code § 8-502(a)(1). Under Idaho law, "[w]here money is advanced on the purchase price of goods, and the seller fails or refuses to deliver, a suit to recover the money advanced is an implied contract for the direct payment of money permitting the issuance of an attachment." *B.J. Carney & Co. v. Murphy*, 195 P.2d 339, 383 (Idaho 1948); *see also Wallace v. Perry*, 257 P.2d 231, 233-235 (Idaho 1953). In this case, Defendant made a progress payment of $357,062.40 to PSI for the fabrication and installation of two 200,000 gallon welded water storage tanks. (Dkt. 3-2, ¶ 4.) PSI materially breached the contract by failing to perform the contracted goods and services also confirming verbally that it was unable to perform any further work under the parties' contract. (*Id.* at ¶ 5.)

Second, Defendant's contractual obligations are not secured by a mortgage, deed of trust, security interest, or lien upon real or personal property also as required by Idaho Code § 8-502(a)(1). *See Caragnol Aff.,* ¶ 9 (Dkt. 3-2). Third, Defendant is a resident of Idaho. Accordingly, Idaho Code Section 8-502(a)(2) does not apply. Fourth, Plaintiff has submitted a sworn affidavit indicating that the attachment is not sought and the action is

not prosecuted to hinder, delay or defraud any creditor of the Defendant, thus satisfying Idaho Code §§ 8-502(a)(2)-(3). (Dkt. 302, ¶ 12.)

Thus, the Court finds that the Plaintiff has made the showing necessary to demonstrate that a writ of attachment is appropriate pursuant to Idaho Code § 8-502(a). Therefore, the Court will issue an order to show cause and notice of hearing consistent with the procedure set forth in Idaho Code § 8-502(b).

### B. *Plaintiff Has Not Shown Probable Cause that a Writ of Attachment Should Issue Before the Time Set for Hearing.*

The Court does not find probable cause to issue the writ prior to holding a show cause hearing pursuant to Idaho Code§ 8-502(c). Specifically, Plaintiff has not shown what specific property it seeks to attach or that "the property specifically sought to be attached is a bank account subject to the threat of imminent withdrawal." *See* I.C. § 8-502(c)(3).

Again, Mr. Caragnol provided a sworn affidavit stating that he believed, based upon conversations between the Plaintiff and Defendant, that Defendant was nearing insolvency as of April 2017. *Caragnol Aff.*, ¶ 11 (Dkt. 3-2). Further, on March 6, 2017, Plaintiff received a letter from D.L. Evans Bank claiming a perfected security interest in all payments owed to Defendant and demanding that all future payments otherwise due to Defendant, be made to D.L. Evans Bank. *Id.*

This sworn testimony may be sufficient for the Court to find that Defendant's assets are subject to the threat of imminent withdrawal. Nonetheless, because Plaintiff has not identified the specific property it seeks to attach, the Court cannot specifically find that

the property sought to be attached is a bank account subject to imminent withdrawal. Accordingly, the writ of attachment will not issue prior to the show cause hearing.

**2.      Motion for TRO**

A temporary restraining order ("TRO") is not appropriate in this case because Plaintiff has failed to demonstrate irreparable harm and an injunction is not necessary to preserve the status quo.

Under Federal Rule of Civil Procedure 65, a court may issue a temporary restraining order when the moving party provides specific facts showing that immediate and irreparable injury, loss, or damage will result before the adverse party's opposition to a motion for preliminary injunction can be heard. Fed. R. Civ. P. 65. "Injunctive relief is an extraordinary remedy and it will not be granted absent a showing of probable success on the merits and the possibility of irreparable injury should it not be granted." *Shelton v. Nat'l Collegiate Athletic Assoc.*, 539 F.2d 1197, 1199 (9th Cir. 1976).

The purpose of a temporary restraining order is to preserve the status quo before a preliminary injunction hearing may be held; its provisional remedial nature is designed to prevent irreparable loss of rights prior to judgment. *See Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984). This court must consider the following elements in determining whether to issue a temporary restraining order and preliminary injunction: (1) likelihood of success on the merits; (2) likelihood of irreparable injury if preliminary relief is not granted; (3) balance of hardships; and (4) advancement of the public interest. *Winter v. N.R.D.C.*, 555 U.S. 7, 20 (2008); *Stanley v.*

*Univ. of S. California*, 13 F.3d 1313, 1319 (9th Cir. 1994); Fed. R. Civ. P. 65 (governing both temporary restraining orders and preliminary injunctions).

The party seeking the injunction must satisfy each element; however, "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). "Serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Id.* at 1135 (internal quotations marks omitted).

In this case, the Plaintiff cannot demonstrate irreparable harm. The Complaint is clear: Plaintiff seeks to compensated for a monetary loss. While the Defendant may not have sufficient funds to compensate Plaintiff for that loss, the loss itself by its nature is compensable and not irreparable. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, (2006) ("According to well-established principles of equity," plaintiff must demonstrate remedies available at law are inadequate to compensate for injury for injunction to issue); *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League,* 634 F.2d 1197, 1202 (9th Cir. 1980) (temporary loss of income is a monetary injury that could be remedied by damage award and does not constitute irreparable injury).

Furthermore, Plaintiff seeks mandatory injunctive relief requiring Defendant to pay Plaintiff its full measure of damages as opposed to simply preserving the status quo. Where the moving party seeks a mandatory preliminary injunction granting relief that goes

MEMORANDUM DECISION AND ORDER- 8

well beyond the status quo as it exists during the litigation, courts should be "extremely cautious." *Martin v. International Olympic Committee,* 740 F.2d 670, 675 (9th Cir.1984); *see also Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320 (N.D. Cal. 1995). The Court finds this is a separate basis for denying the requested TRO.

## CONCLUSION

Plaintiff has made the requisite showing that a writ of attachment should issue but not before Defendant has had an opportunity to appear and show cause why the application should be denied. The Court will issue a separate order to show cause and notice of hearing consistent with the procedure set forth in Idaho Code § 8-502(b).

## ORDER

NOW THEREFORE IT IS HEREBY ORDERED that the Plaintiff's Application for Writ of Attachment and TRO is GRANTED IN PART and DENIED IN PART. The Application for Writ of Attachment is GRANTED to the extent the Court will hold a show cause hearing on the writ of attachment issue. The Application is denied in all other respects as stated herein.

DATED: September 7, 2017

Edward J. Lodge
United States District Judge